**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | **Case No. 1:14-mj-275-JMF** |
| **v.** | ) | |
| | ) | |
| **DANIEL HARRY MILZMAN,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**DEFENDANT'S OPPOSITION TO THE GOVERNMENT'S APPEAL**
**FROM MAGISTRATE JUDGE'S ORDER DENYING GOVERNMENT'S**
**MOTION FOR PRETRIAL DETENTION**

COMES NOW, the defendant, DANIEL HARRY MILZMAN, by and through counsel, and respectfully submits to this Honorable Court his Opposition to the Government's Appeal from Magistrate Judge's Order Denying Government's Motion for Pretrial Detention. Mr. Milzman is a nineteen-year-old United States citizen who has no prior convictions or arrests and has substantial family ties to the Washington, D.C. Metropolitan area. For those reasons and the ones that follow, Mr. Milzman respectfully requests that this Honorable Court affirm the decision of the Magistrate Judge releasing him from custody and placing him under conditions of release pursuant to, and as contemplated by, 18 U.S.C. § 3142.

**INTRODUCTION**

As this Court is aware, the Honorable John M. Facciola denied the government's motion for pretrial detention following an extensive hearing on March 25, 2014. At that hearing, Judge Facciola carefully considered the arguments of counsel as well as various documents offered by the parties. The government's now filed appeal from Judge Facciola's order merely regurgitates the same arguments the government advanced in open court and in its original pleading. The government's appeal also misconstrues or misapprehends the primary bases for Judge Facciola's ruling. While the government contends that Judge Facciola denied its motion by merely

"crediting the defendant's self-serving statements to law enforcement that he intended to use the ricin to commit suicide," it neglects to inform this Court that in reality, Judge Facciola placed great emphasis on the report submitted by Dr. Adam Lowy, Medical Director Adult Services at the Psychiatric Institute of Washington, D.C.  Dr. Lowy's report confirms not only the validity of Mr. Milzman's mental state at the time of his apprehension but also documents his long history of major depressive disorder, for which Mr. Milzman has been medicated for over four years.[1]

The government ignores Dr. Lowy's compelling insight and analysis and instead concentrates on the story they want to tell as opposed to the story that is.  The government continues to cling to a theory even they cannot bring themselves to fully believe, in an effort to keep this nineteen-year-old college student in solitary confinement in the D.C. Jail as opposed to in treatment at Sibley Hospital.

Also lacking from the government's pleading is mention of the fact that nearly 50 members of the community attended the Court hearing in support of Mr. Milzman, a clear sign that those who know him best know that he poses no risk to the community.  For these reasons, and others to be presented at the hearing, Mr. Milzman respectfully requests that this Honorable Court affirm Judge Facciola's denial of the government's motion for pretrial detention and release Mr. Milzman on the same conditions.

## I.        THE INFORMATION AND ALLEGATIONS

Mr. Milzman is charged in a one count criminal complaint alleging that he knowingly possessed a biological toxin (ricin) in violation of 18 U.S.C. § 175(b). The complaint acknowledges that a rather small amount of ricin was located in Mr. Milzman's dorm room and

---

[1] Moreover, the government fails in its appeal to advise this Court of Judge Facciola's reliance on Dr. Wagdi Attia's letter to the Court regarding the psychiatric treatment program that will be administered at Sibley Memorial Hospital.

that the amount recovered was not capable of inflicting widespread harm.  Indeed, the affidavit provides that the substance recovered from Mr. Milzman's room was only potentially lethal if injected or inhaled by a single individual.  Finally, although the affidavit attributes several statements to Mr. Milzman, it fails to provide that Mr. Milzman advised law enforcement that he had contemplated ingesting the ricin himself in an attempt to end his own life in a way that would not have appeared to his family and friends that he had committed suicide.  There is no credible basis for believing that the substance recovered from Mr. Milzman's room was intended for anyone other than himself.  Moreover, based upon conversations that counsel has had with Mr. Milzman's doctors, Mr. Milzman's mental health condition has improved substantially and further treatment is recommended.

## II.    ARGUMENT

In the instant case, there are terms and conditions of release that can be fashioned to reasonably assure Mr. Milzman's attendance at court proceedings and the safety of the community upon his release.  Mr. Milzman's release on conditions would be consistent with both the stated purpose and intent of 18 U.S.C. § 3142 as well as the presumption of innocence and relevant Supreme Court precedent.

### A.    General Principles

In *Stack v. Boyle*, 342 U.S. 1 (1951), the Supreme Court recognized the significant principles that an individual should not have to suffer imprisonment on a charge for which they have yet to be convicted and that reasonable conditions of release need to be considered in light of the specific individual before the court.  More recently, the Supreme Court has reinforced those principles by holding that "[f]reedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty th[e] [Fifth

Amendment] protects." *Zadvjdas v. Davis*, 533 U.S. 678 (2001); *see also Foucha v. Louisiana*, 504 U.S. 71, 112 (1992) (describing freedom from physical restraint as being at the core of constitutional rights under the Fifth Amendment); *see also United States v. Salerno*, 481 U.S. 751, 755 (1987) ("In our society liberty is the norm and detention prior to trial or without trial is a carefully limited exception.").

Consistent with Supreme Court precedent, the United States Code empowers this Court to use its broad authority and judicial powers to fashion terms and conditions of release from a wide array of options. *See* 18 U.S.C. § 3142(c). Indeed, the Code contemplates release in *every* case where the Court can reasonably assure that the defendant will appear at subsequent proceedings and will not pose a danger to the community. 18 U.S.C § 3142(b). The government must prove dangerousness by "clear and convincing" evidence and must prove risk of flight by a "preponderance of the evidence." *See United States v. Simpkins*, 826 F.2d 94, 96 (D.C. Cir. 1987); *see also United States v. King*, 849 F.2d 485, 489 (11th Cir. 1988); 18 U.S.C. § 3142(f). "Section 3142 speaks of conditions that will 'reasonably' assure appearance, not guarantee it." *See United States v. Xulam*, 84 F.3d 441, 444 (D.C. Cir. 1996); *see also United States v. Orta*, 760 F.2d 887 (8th Cir. 1985) (*en banc*). To require a "guarantee" would contradict the framework and clear intent of the Bail Reform Act of 1984, which was that Congress intended for detention to apply only to a "small number" of dangerous defendants. *Id*. at 890-91. When making these determinations, courts must consider "the nature and circumstances of the offense, including whether it is violent or nonviolent in nature; the weight of the evidence; the history and characteristics of the person, including her character, family ties, employment, length of residence in the community, community ties, past conduct, criminal history, and record of court

appearances; and the danger the defendant poses to the community if released." *United States v. Hanson*, 613 F. Supp. 2d 85, 88 (D.D.C. 2009) (citing 18 U.S.C. § 3142(g)).

Section 3142 lists a number of charges that give rise to a *rebuttable* presumption that there are no conditions that will reasonably assure the defendant's appearance or ensure the safety of the community. 18 U.S.C. § 3142(e). The charge contained in the criminal complaint triggers the rebuttable presumption pursuant to §§ 3142(e)(3)(E), which applies to certain offense listed in 18 U.S.C. § 2332b(g)(5). Nevertheless, once a rebuttable presumption is created, it merely "imposes a burden of production on the defendant to offer contrary credible evidence." *See United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir.1985). This burden of production "is not a heavy one to meet." *United States v. Dominguez*, 783 F.2d 792, 707 (7th Cir. 1986). Indeed, a defendant simply must produce some evidence "to suggest" that he is neither dangerous nor likely to flee if released on bail. *United States v. Quartermaine*, 913 F.2d 910, 916 (11th Cir. 1990); *see also United States v. Miller*, 625 F. Supp. 513, 519 (D. Kan. 1985) (describing the burden as one merely requiring a defendant "to offer some credible evidence contrary to the statutory presumption"). Any evidence favorable to a defendant that comes within a category listed in 18 U.S.C. § 3142(g) can rebut the presumption, including evidence of marital, family and employment status; ties to and role in the community; lack of criminal record; and other types of evidence encompassed in § 3142(g)(3).

**B.     This Court Should Find That There Are Conditions of Release That Will Reasonably Assure Mr. Milzman's Appearance and the Safety of the Community.**

We respectfully submit that Mr. Milzman's personal history and ties to the community sufficiently establish that there are conditions available to the Court that will reasonably assure his appearance at future court proceedings and that will ensure the safety of the community. Mr.

Milzman is nineteen years old and has had no prior involvement with the criminal justice system. He was born in Virginia and raised in Maryland, having graduated from Walt Whitman High School.  At the time of the alleged offense, he was enrolled at Georgetown University along with his two older brothers.  His parents, both doctors, reside in Bethesda and work at hospitals in the District of Columbia.

Based on representations Mr. Milzman made to agents at the time he was confronted in his dorm room, he was transferred to the Psychiatric Institute of Washington ("PIW"), where he remained voluntarily until agents unexpectedly apprehended him.  Prior to his apprehension, doctors at PIW believed Mr. Milzman had progressed to a point where he could return home but maintain outpatient mental health counseling.  Nevertheless, Mr. Milzman and his family were exploring opportunities for continued inpatient treatment at local facilities.  Arrangements were being made for Mr. Milzman to move directly from PIW to an inpatient program at Sibley Hospital.[2]  As a result of his arrest, however, Mr. Milzman has been held for five (5) days in the Medical Unit at the D.C. Jail.[3]  Rather than receiving appropriate and beneficial mental health treatment and counseling, this nineteen-year-old student has been held in solitary confinement and has had no contact with his family.  For the foregoing reasons, we ask the Court to affirm Mr. Milzman's release pending trial.

---

[2] Undersigned counsel has been advised that Sibley Hospital has already cleared a space for Mr. Milzman in their inpatient treatment program and would be available to accept Mr. Milzman immediately upon his release.

[3] Mr. Milzman has since been incarcerated for an additional day as a result of the government's appeal.

### III.   THE PROPOSED CONDITIONS OF RELEASE REBUT ANY PRESUMPTION OF DETENTION AND MORE THAN ADEQUATELY PROTECT THE SAFETY OF THE COMUUMNNIT

We respectfully request that this Court affirm Judge Facciola's Order, which carefully considered the factors set forth in Section 3142, and order Mr. Milzman be released on the following conditions:[4]

1. The defendant shall be immediately released to the custody of his parents.

2. Upon his release, the defendant's parents must immediately transport him to Sibley Memorial Hospital where the defendant must attend a residential treatment program for a minimum of fourteen (14) days.  The defendant is not permitted to leave the Sibley Memorial Hospital residential treatment program without further Order by the Court.

3. On the twelfth day of the defendant's stay in the residential treatment program, defense counsel is directed to obtain and forward a report to the Court from one of the defendant's treatment providers indicating whether the defendant is suitable for release from the inpatient program and if so under what conditions.

4. A hearing shall be held at least two days prior to the defendant's release from the Sibley treatment program so that the Court can evaluate the defendant's progress and impose any additional special conditions of release.

5. If released from Sibley Memorial Hospital, defendant will be placed in the Pretrial Services Agency's High Intensity Supervision Program (HISP).  HISP will monitor the defendant's mental health treatment and make sure that he maintains mental health services.

---

[4] These conditions are in addition to the standard terms of release as well as those that ordinarily attend to placement in the High Intensity Supervision Program.

6. Upon Mr. Milzman's eventual release, the defendant must be placed into 3rd party custody of his parents, reside at his parent's residence, and his parents are ordered to ensure that he is supervised by another adult at all times.

These conditions more than rebut any statutory presumption and the government has proffered no evidence or reason to disturb Judge Facciola's Order.

WHEREFORE based on the foregoing reasons and any others that may appear to the Court or that may develop at the detention hearing, Mr. Milzman respectfully requests that this Honorable Court affirm the decision of Judge Facciola and deny the government's appeal.


Date:  March 26, 2014                    Respectfully submitted,


                                         /s/ Danny Onorato
                                         Danny Onorato (DC Bar #480043)
                                         *Attorney for Daniel Milzman*
                                         SCHERTLER & ONORATO, LLP
                                         575 7th Street, N.W.  Suite 300 South
                                         Washington, DC  20004
                                         Telephone:  (202) 628-4199
                                         Facsimile:  (202) 628-4177
                                         donorato@schertlerlaw.com


                                         /s/ Stuart A. Sears
                                         Stuart A. Sears (DC Bar #977144)
                                         *Attorney for Daniel Milzman*
                                         SCHERTLER & ONORATO, LLP
                                         575 7th Street, N.W.  Suite 300 South
                                         Washington, DC  20004
                                         Telephone:  (202) 628-4199
                                         Facsimile:  (202) 628-4177
                                         ssears@schertlerlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of March, 2014, I electronically filed a true copy of the foregoing motion with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to all parties.

/s/ Stuart A. Sears
Stuart A. Sears
DC Bar 977144
*Attorney for Daniel Milzman*
SCHERTLER & ONORATO, LLP
575 7th Street, N.W.  Suite 300 South
Washington, DC  20004
Telephone:  (202) 628-4199
Facsimile:  (202) 628-4177
ssears@schertlerlaw.com