UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
**UNITED STATES OF AMERICA,**       )
                                    )
    **v.**              )
                                    ) **Criminal Action No. 14-mj-275**
**DANIEL H. MILZMAN,**              )
                                    )
    **Defendant.**      )
_____)

## MEMORANDUM OPINION

The government sought review of Magistrate Judge John Facciola's order releasing defendant Daniel Milzman on conditions after the government had moved for the defendant to be detained.  A hearing was held on March 26, 2014 and the government and defense counsel presented argument.  Milzman was ordered detained on March 31, 2014.  This Memorandum Opinion sets forth in further detail the basis for that ruling.

## BACKGROUND

The government filed a criminal complaint against Milzman on March 20, 2014, and the magistrate judge issued an arrest warrant for Milzman on March 21, 2014.  The criminal complaint charged Milzman with one count of possession of a biological toxin in violation of 18 U.S.C. § 175(b).  It alleged that late in the evening on March 17, 2014, Milzman, a student at Georgetown University, had informed a Residential Advisor ("RA")

that he had produced ricin.  Milzman allegedly then showed the RA a plastic bag containing what Milzman claimed was ricin.[1]

On March 25, 2014, the government filed a motion in support of pre-trial detention and the defense counsel filed a motion for bond.  At the March 25th hearing, the magistrate judge found Milzman to be competent to continue with court proceedings in this matter.  The magistrate judge denied the government's motion for pretrial detention and granted Milzman's motion to be released from custody.  In addition, the magistrate judge ordered that Milzman be placed in the Specialized Mental Health Supervision Program within the High Intensity Supervision Program.  The government sought review of the magistrate judge's order releasing defendant Milzman on conditions.  A hearing was held on March 26, 2014 and both sides presented argument.  At a second hearing on Monday, March 31, 2014, Milzman was ordered detained.

## DISCUSSION

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." United States v. Salerno, 481 U.S. 739, 755 (1987).  "The Bail Reform Act of 1984 sets forth the limited circumstances in which

---

[1] At the initial appearance, the magistrate judge ordered a mental competency examination and scheduled a competency hearing for March 25, 2014.  The magistrate judge also ordered Milzman to be held without bond.

a defendant may be detained before trial despite the presumption in favor of liberty."  United States v. Hanson, 613 F. Supp. 2d 85, 87-88 (D.D.C. 2009).  Under the Bail Reform Act, a judicial officer "shall order" the detention of a defendant before trial if, after a hearing, "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]"  18 U.S.C. § 3142(e)(1).

While pre-trial liberty is the norm in our criminal justice system, the Bail Reform Act creates a rebuttable presumption that no conditions or combinations of conditions of release will reasonably assure the safety of any other person and the community where, as here, there is probable cause to believe that the defendant possessed a biological toxin in violation of 18 U.S.C. § 175(b), punishable by 10 years.  Id. § 3142(e)(3)(c).  The defendant may rebut the presumption by offering credible evidence to the contrary, United States v. Alatishe, 768 F.2d 364, 371 (D.C. Cir. 1985), although the defendant here has not challenged probable cause and probable cause does exist.  The appropriateness of pretrial detention nevertheless must be shown by clear and convincing evidence.  To determine whether detention is appropriate, a court must take into account, de novo, among other things:

>   (1) the nature and circumstances of the offense
>   charged, including whether the offense is a crime of
>   violence;
>   (2) the weight of the evidence against the person;
>   (3) the history and characteristics of the person,
>   including--
>       (A) the person's character, physical and mental
>       condition, family ties, community ties, past
>       conduct, criminal history; and
>       (B) whether, at the time of the current offense
>       or arrest, the person was on release pending
>       trial, sentencing, appeal, or completion of
>       sentence; and
>   (4) the nature and seriousness of the danger to any
>   person or the community that would be posed by the
>   person's release.

18 U.S.C. § 3142(g)(1)-(4).

The government argues essentially that the offending conduct charged posed a deadly danger to others, that the evidence of Milzman possessing the deadly toxin is weighty, and that his release could pose a deadly danger to others.  Govt.'s Appeal from Magistrate Judge's Order Denying Govt.'s Mot. for Pretrial Detention ("Govt.'s Appeal") at 10-17.  The defense argues essentially that Milzman has no record of harming anyone, that his mental health history shows that he was intent on harming only himself and no one else, and that he is amenable to treatment and supervision that will address any perceived dangers to others.  Def.'s Opp'n to the Govt.'s Appeal from Magistrate Judge's Order Denying Govt.'s Mot. for Pretrial Detention (Def.'s Opp'n) at 1-6.

Milzman's conduct posed several possibilities.  It could be that he created the ricin to have it available for an act of suicide, as he insists.  It is also possible that he created the ricin to use on someone else, or he may have had dual or multiple targets, including himself.  At minimum, credible evidence that he posed no danger to others would be needed to successfully rebut the detention presumption.  At bottom, the evidence does not confidently and credibly establish that the defendant's conduct was a threat only to himself and that his release under conditions would be consistent with safety for others and the community.

The nature and circumstances of the offense favor detention.  There is evidence to support the contention that Milzman made the ricin to harm someone else.  Milzman stated that he learned about ricin from a television show where it was used to poison adversaries.  Govt.'s Appeal at 7 n.5.  Milzman had sent messages to another undergraduate student enrolled at Georgetown University with whom the defendant had had a previous relationship, wishing that student harm, id. at 14, and did not deny to his friend, the RA, that he intended to use the ricin on that student.  When the RA directly asked Milzman if he had intended to use the ricin on that student, Milzman shrugged. Id. at 4, 14.  Furthermore, when Milzman was asked directly whether he posed a threat to others or was suicidal, "Milzman

denied being suicidal, and stated that he was 'definitely a threat to someone,' but declined to elaborate what he meant." Id. at 4. The defendant asked the RA what the RA would do if someone got hurt from the ricin. Id. When the RA replied that he would have to alert the police, and the defendant insisted that the RA was the only one who could connect him to the ricin -- as he had disposed of the by-products connecting him to the ricin in a dumpster far away in Bethesda, Govt.'s Appeal at 6 -- that led the RA to believe that the defendant was going to use the ricin not on himself but on someone else. Id. at 14. Furthermore, the defendant's varied claims as to when he made the ricin strain his credibility. He first told his friend that he had made the ricin over the previous four days during spring break, but told law enforcement who responded later that he had made the ricin over a month earlier, projecting the impression that the ricin threat was not a current one. Id. at 8 n.8. Even though there is strong evidence from mental health professionals supporting Milzman's claim that he was indeed suicidal, these reports do not eliminate the possibility that Milzman may have also formulated a plan to harm others by producing the ricin, and therefore, may pose a threat to the community. In this way, the first factor under the Bail Reform Act weighs in favor of detention.

The weight of the evidence against the defendant also weighs in favor of detention. Milzman admitted to his friend, the RA to whom he showed the ricin, to the Washington, D.C. fire and police officials who responded to his dormitory room and whom he directed to the stashed ricin, and to FBI agents, that he made the ricin and stored the toxin in his dormitory room. The ricin was found where Milzman said it was stored in his desk. Id. at 6. The substance did test positive as a biological toxin. Aff. in Supp. of Crim. Compl. & Arrest Warrant ("Aff.") ¶ 13; Govt.'s Appeal at 8-9. The concentration of the ricin Milzman made could have killed someone ingesting it. Aff. ¶ 16-17. Milzman's ability and determination to create such a toxin also reflects the seriousness of the danger to others should Milzman be released.

It is true that the defendant's history and characteristics do not weigh in favor of detention. Milzman has no prior record of arrests or convictions or violence. Def.'s Opp'n at 6. Milzman did provide medical evidence suggesting a mental disorder that would benefit from the treatment that the magistrate judge ordered in his release order. However, this factor does not outweigh the others that favor detention. Accordingly, Milzman has failed to rebut the statutory presumption that there is no condition or set of conditions that will reasonably assure the safety of the community.

**CONCLUSION**

There is probable cause to believe that Milzman violated 18 U.S.C. § 175(b) and therefore, there is a presumption that Milzman should be detained pending trial.  Milzman failed to rebut that presumption.  Accordingly, Milzman was ordered detained but placed on rigorous suicide watch.  Milzman's counsel were invited to try to arrange to have Milzman's family physicians get access to the defendant for treatment while he is in custody.  Counsel were also notified that if there is an appropriate role for the court to play in achieving that approval, counsel may file to request that support.

SIGNED this 8th day of May, 2014.


_____/s/_____
RICHARD W. ROBERTS
Chief Judge